UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LITTLELEE RAGSDALE, | 4:20-CV-04203-RAL |
| Petitioner, | |
| | **OPINION AND ORDER GRANTING MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER JURISDICTION** |
| vs. | |
| J.W. COX, in his capacity as Warden of Yankton Federal Prison Camp, | |
| Respondent. | |

Petitioner, Littlelee Ragsdale, filed a pro se petition for habeas corpus pursuant to 28 U.S.C.
§ 2241. Doc. 1. Ragsdale is an inmate at the Yankton Federal Prison Camp (Yankton FPC) in
Yankton, South Dakota. Doc. 1 at 1. In his petition, Ragsdale seeks to require the Bureau of
Prisons (BOP) to immediately apply the earned time credits he asserts he has accumulated under
the First Step Act. Doc. 1 at 2, 8. Respondent, the Warden of Yankton FPC, filed a Motion to
Dismiss Ragsdale's habeas petition asserting failure to exhaust administrative remedies, lack of
subject matter jurisdiction, and failure to state a claim. Doc. 14. Ragsdale opposed dismissal and
filed a motion requesting this Court to proceed with his petition. Docs. 19, 21. For the following
reasons, this Court grants the Warden's motion for dismissal based on lack of subject matter
jurisdiction.

## I.     Background

Ragsdale is serving a 108-month sentence of imprisonment for possession with intent to
distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and
(b)(1)(C). Doc. 16 ¶ 4. Ragsdale has a projected release date of August 10, 2022 based on his
anticipated successful completion of the Residential Drug Abuse Treatment Program (RDAP)

under 18 U.S.C. § 3621(e).  Doc. 16 ¶ 4.  His sentence was imposed on June 27, 2016, in the United States District Court for the District of Wyoming.  Doc. 16-1 at 2.

On or about December 2, 2020, Ragsdale submitted a Request for Administrative Remedy form to the Warden requesting to redeem the earned time credits he had accumulated since 2018 under the First Step Act. Doc. 1-1 at 4.  The Warden denied Ragsdale's request on December 10, 2020, stating the earned time credit portion of the First Step Act did not become effective until January 15, 2022.  Doc. 1-1 at 3.  The Warden also explained that to earn time credits, the BOP staff must assign the inmate to the evidence-based recidivism reduction programming or productive activity based on an identified need for the inmate.  Doc. 1-1 at 3.

Ragsdale was informed he could appeal to the Regional Director if dissatisfied with the Warden's decision, and Ragsdale did so.  Doc. 1-1 at 3, 5.  On December 31, 2020, the Regional Director issued a response, which recited various milestones the BOP had completed in implementing the First Step Act.  Doc. 16-4 at 1.  The response advised Ragsdale "[t]he Department of Justice and Federal Bureau of Prisons are reviewing the legislation and will implement all necessary steps to comply with this significant piece of legislation. As such, you are encouraged to maintain clear conduct and participate in recommended programs." Doc. 16-4 at 1. Ragsdale was again advised of his right to appeal, which was to the Office of General Counsel (Central Office).  Doc. 16-4 at 1.  An appeal to the Central Office is the final step in the administrative review process.  Doc. 16 ¶ 8.  Ragsdale availed himself of this final step on or about January 28, 2021.  Doc. 16 ¶ 16, Doc. 21-1.  On March 29, 2021, the Central Office issued a response concurring with "the manner in which the Warden and Regional Director addressed [Ragsdale's] issue[.]" Doc. 27-1.

2

## II.     First Step Act

The First Step Act (FSA), Public Law No. 115-391, 132 Stat. 5195, was enacted on December 21, 2018 and brought about a number of prison and sentencing reforms.  One of the reforms required the Attorney General to create a "risk and needs assessment system" to individually classify, identify, and provide appropriate evidence-based recidivism reduction programs or productive activities to prisoners.  See 18 U.S.C. § 3632(a).  Congress directed that the risk and needs assessment system (System) be used to "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities[.]"  Id. § 3632(a)(6).  The types of incentives and rewards available to prisoners for participation in programming and productive activities include phone and visitation privileges, transfers to facilities closer to home, increased commissary spending, and time credits. Id. § 3632(d)(1)–(4).  The System is also used to "determine when a prisoner is ready to transfer into prerelease custody or supervised release[.]"  Id. § 3632(a)(7).

Ragsdale's § 2241 petition involves the earned time credit portion of the FSA.  Doc. 1. Under the FSA, time credits may be earned by eligible prisoners who successfully complete "evidence-based recidivism reduction programming" or "productive activities."  18 U.S.C. § 3632(d)(4)(A).  Time credits are earned at the rate of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  Id. § 3632(d)(4)(A)(i).  Certain minimum and low risk prisoners are eligible to earn an additional 5 days of time for every 30 days of successful participation.  Id. § 3632(d)(4)(A)(ii). Not all programs or activities that a prisoner may engage in while incarcerated qualify for time credits.  See id. §§ 3635(3), (5).  Limits are also placed on when those credits may be earned.  "A prisoner may not earn time credits . . . for an evidence-based recidivism reduction program that

3

the prisoner successfully completed" before the enactment of the FSA or prior to commencement of the prisoner's sentence. Id. § 3632(d)(4)(B).

To effectively further the purposes of the law, deadlines were incorporated for completion of various milestones toward fully implementing the FSA's prison and sentencing reforms.  The FSA required that within 210 days of enactment, the Attorney General had to establish a comprehensive "risk and needs assessment system" to assess and determine the individual risks and needs of each prisoner.  See 18 U.S.C. § 3632(a).  The United States Department of Justice met this goal on July 19, 2019 when the system was announced.  See U.S. Dep't of Justice, The First Step Act of 2018: Risk and Needs Assessment System -- Update available at https://www.bop.gov/inmates/fsa/reports.jsp (last checked May 12, 2021).

The next milestone, which was due 180 days thereafter, was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A).  On January 15, 2020, the BOP announced that all inmates had been screened using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN").   Press Release, U.S. Dep't of Justice, Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation available at https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last checked May 12, 2021).

The final milestone, which commenced after the initial risk assessments for all prisoners were completed, is a 2-year phase-in period for providing evidence-based recidivism reduction programming and productive activities.  18 U.S.C. § 3621(h)(2)–(3).  During the phase in period, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities to *all* prisoners, and during that time the BOP is to further develop and

4

validate the PATTERN tool. Id. § 3621(h)(2) (emphasis added).  During the phase-in period, the
BOP was instructed to provide priority for programming to prisoners based on his or her proximity
to release date.  Id. § 3621(h)(3).  Congress also gave the BOP authority to use the incentives and
rewards program for prisoners who successfully participate in approved programming and
productive activities during this time.  Id. § 3621(h)(4).  Section 3621(h)(4) provides:

> **(4)  Preliminary expansion of evidence-based recidivism reduction programs
> and authority to use incentives.**—Beginning on the date of enactment of this
> subsection, the Bureau of Prisons may begin to expand any evidence-based
> recidivism reduction programs and productive activities that exist at a prison as of
> such date, and may offer to prisoners who successfully participate in such programs
> and activities the incentives and rewards described in subchapter D.

Id.

### III.    Administrative Exhaustion

The Warden seeks to dismiss Ragsdale's petition for failing to exhaust administrative
remedies. Doc. 14, Doc. 15 at 16–19.  A petitioner seeking habeas corpus relief under 28 U.S.C. §
2241 must exhaust his or her administrative remedies prior to filing. Mathena v. United States, 577
F.3d 943, 946 (8th Cir. 2009); United States v. Chappel, 208 F.3d 1069, 1069 (8th Cir. 2000) (per
curiam).  "Exhaustion is required because it serves the twin purposes of protecting the
administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503
U.S. 140, 145 (1992), superseded by statute, Prison Litigation Reform Act of 19965, Pub. L. No.
104–134, 110 Stat. 1321.  Nevertheless, administrative exhaustion under § 2241 is a judicially
created doctrine and not a jurisdictional prerequisite. Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th
Cir. 2007).

Here, Ragsdale has now exhausted his administrative remedies.  The last step of the
administrative process was completed when the General Office issued its final response denying
the relief Ragsdale sought.  See Doc. 27-1.  The Warden's argument that the doctrine of

administrative exhaustion requires dismissal is moot.[1]

## IV.    Subject Matter Jurisdiction

The Warden next argues that Ragsdale's petition should be dismissed because his request for relief is premature. Doc. 15 at 19–22. According to the Warden, there is no justiciable case or controversy as required by Article III of the United States Constitution because "the deadline for implementing the incentives component of the Risk and Needs Assessment System has not passed." Doc. 15 at 19. The Warden agues the deadline for the BOP's implementation of the incentives component for all prisoners is January 15, 2022. See Doc. 15 at 19–20. During the phase-in period, Congress indicated the BOP "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described." 18 U.S.C. § 3621(h)(4). The BOP has chosen not to offer the FSA time credits prior to January 15, 2022.[2]

The Warden presents two additional arguments for dismissal based on the alleged prematurity of Ragsdale's petition. The first is that Ragsdale's release date of August 10, 2022 is after the January 15, 2022 deadline for implementing the incentive component, implying Ragsdale has not suffered any prejudice or injury at this time. Doc. 15 at 22–23. And, second that Ragsdale "has only completed 40 hours, or five days, of [evidence-based recidivism reduction]

---

[1] In a number of similar cases pending in the District of South Dakota, the United States has asserted that administrative exhaustion will enable the BOP to develop a factual record for the court. Ragsdale's case is another example that, in reality, a factual background is not being developed during the BOP's administrative appeal process for inmates requesting to apply FSA earned time credits prior to January 15, 2022. The United States should reconsider the use of this argument until such time as the BOP's administrative remedy process is actually making the factual record described by its counsel.

[2] This Court recognizes the parties' references to Goodman v. Ortiz, No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020), which addresses the extent of the BOP's authority to delay implementation of the time credit incentives during the phase-in period. This Court finds it unnecessary in this case to determine whether the word "may" in 18 U.S.C. § 3621(h)(4) should be interpreted to mean "shall."

programming[3] [and] he has not earned enough time credits to create a concrete dispute." Doc. 15 at 23.

This Court's subject matter jurisdiction encompasses only "cases" and "controversies" under Article III, § 2 of the Constitution. A petitioner's standing to sue is a necessary component of the "case or controversy" requirement. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Standing to sue includes three elements: (1) the petitioner must have suffered an "injury in fact" that is concrete, particularized, and "actual or imminent," not conjectural or hypothetical; (2) the injury must be traceable to the respondent's action which is being challenged; and (3) the injury must be one that would be redressed by a decision favorable to the petitioner. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Whether standing exists is a question of law for this Court to determine. Park v. Forest Serv. of U.S., 205 F.3d 1034, 1036 (8th Cir. 2000).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 493 (8th Cir. 1991). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (internal citation

---

[3] To determine whether an inmate has successfully participated in 30 days of evidence-based recidivism reduction programming or productive activities, the BOP has proposed regulations indicating a "day" is equivalent to an eight-hour period. See 85 Fed. Reg. 75,268 at 75,272 (proposed version of 28 C.F.R. §§ 523.42(b), (c)).

omitted).  If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute."  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the Warden asserts both a facial and a factual attack on subject matter jurisdiction.  As to a facial attack, the Warden argues the deadline for implementing and applying First Step credits has not come to pass.  Doc. 15 at 19–22.  The Warden argues the deadline for implementation of the incentive component is January 15, 2022.  Doc. 15 at 19.  As to a factual attack, the Warden argues Ragsdale's petition is premature because he has not completed enough time credits to create a concrete dispute.  Doc. 15 at 22.  This Court takes up the factual attack on subject matter jurisdiction and conducts an independent review of the evidence presented.

Another way of understanding the argument that Ragsdale's petition is premature is under the requirement of standing.  See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (explaining "in many cases, ripeness coincides squarely with standing's injury in fact prong").  To have standing means Ragsdale must have suffered an "injury in fact" that this Court could redress by a favorable ruling.  See Park, 205 F.3d at 1037.  An "injury in fact" is one that is concrete, particularized, and "actual or imminent," not conjectural or hypothetical.  Lujan, 504 U.S. at 560.  In determining subject matter jurisdiction, this Court must evaluate for itself the merits of whether Ragsdale has suffered an "injury in fact."  Osborn, 918 F.2d at 730.  As the petitioner, Ragsdale has the burden of proof that jurisdiction exists.  Id.

Turning to that issue, Ragsdale contends he is entitled to 365 days of earned time credits under the FSA.  Doc. 1 at 8.  Ragsdale calculates he has completed 730 days of programming since December 21, 2018, when the FSA was enacted, and is eligible to apply half that time to reduce

his sentence. Doc. 1 at 8. The Warden, through an affidavit by a unit manager at Yankton FPC, agrees Ragsdale is eligible to earn First Step time credits under 18 U.S.C. § 3632(d). Doc. 17 ¶ 5.

The FSA's earned time credits are available to an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities . . . ." 18 U.S.C. § 3632(d)(4)(A). The programming and productive activities which qualify for credits are assigned to each prisoner by the BOP according to the individual prisoner's specific criminogenic needs. Id. § 3632(b)(1). Those needs are identified for each prisoner by the BOP through the use of the PATTERN, a risk and needs assessment tool. Id. § 3621(h)(1)(A); see also Doc. 17 ¶ 2.

Ragsdale was initially assessed using the PATTERN Risk Tool in November 2019. Doc. 17 ¶ 6. On June 4, 2020, and September 17, 2020, re-assessments were conducted that designated Ragsdale a Low on the PATTERN Risk Tool. Doc. 17 ¶ 6. Ragsdale was identified as having programming needs in the areas of (1) antisocial peers, (2) cognitions, (3) finance/poverty, (4) trauma, (5) work, (6) parenting, and (7) substance abuse. Doc. 17 ¶ 7. Ragsdale is waiting to begin two programs which will address some of his programming needs; however, he is not entitled to time credits until he has successfully completed those programs. Doc. 17 ¶ 8. Ragsdale is currently participating in a program to address his antisocial peers, cognitions, and substance abuse needs, but has not completed that program, and will not be entitled to credits until that program is successfully completed. Doc. 17 ¶ 9. Ragsdale has, however, completed two phases of a parenting program that have earned him 40 hours of programming credit. Doc. 17 ¶ 10. The unit manager attests that Ragsdale has completed 40 hours of programming that earn him FSA time credits at this point. Doc. 17 ¶ 10.

In his petition, Ragsdale claims that he is entitled to earned time credit for each day he has been incarcerated since the FSA was enacted, regardless of whether he was assigned to or

participated in evidence-based recidivism reduction programming or productive activities.  See Doc. 1 at 8, Doc. 19 at 2.  For instance, in his response to the motion to dismiss, Ragsdale asserts that he is "owed 50% or 15 days for every 30 days [he] participate[s] in any activity." Doc. 19 at 2.  Ragsdale did not provide any explanation or evidence supporting the programming or productive activity he was involved in, how many hours or days of time credits were earned by participating in such programming or productive activity, or how those activities addressed his individually identified needs as assessed by the BOP.

Congress clearly did not intend every program or activity within the prison environment to qualify as an evidence-based recidivism reduction program or productive activity, otherwise there would be no need to specifically define those terms. See 18 U.S.C. §§ 3635(3), (5).  There is no reason to believe Congress intended prisoners to start accumulating earned time credits simply by being incarcerated after the enactment of the FSA.  Yet, this untenable proposition is essentially what Ragsdale asserts in his § 2241 petition.

For these reasons, Ragsdale has not demonstrated he has sustained an injury in fact that this Court could redress.  According to the Warden, Ragsdale has earned only the equivalent of five-days of programming.  There is no colorable evidence that Ragsdale has earned sufficient time credits that would have an actual impact on his sentence now.  Ragsdale's projected release date is August 10, 2022.  Doc. 17-1 at 2.  He is eligible for home detention on February 10, 2022.  Doc. 17-1 at 2.  At this point, Ragsdale's petition asserts nothing more than a conjectural or hypothetical injury.  He has not suffered an injury that is concrete, particularized, and actual or imminent for purposes of standing.

**V.      Conclusion**

Respondent's motion to dismiss is granted for lack of subject matter jurisdiction because

Petitioner has not demonstrated an injury in fact at this time.

Therefore, it is hereby

ORDERED that Respondent's motion to dismiss, Doc. 14, is granted.   It is further

ORDERED that Petitioner's motion to proceed, Doc. 21, is denied as moot.   It is finally

ORDERED that Petitioner's § 2241 petition, Doc. 1, is dismissed without prejudice.

DATED this 12ᵗʰ day of May, 2021.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

11